[No. S113275. Mar. 7, 2005.]

JANET CAMPBELL, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, San Francisco
Defendant and Respondent.

**COUNSEL**

Leo F. Donahue; Law Offices of Martin F. Jennings, Jr., Martin J. Jennings, Jr., and Stephan Mandell for Plaintiff and Appellant.

E. Lyn Lemaire as Amicus Curiae on behalf of Plaintiff and Appellant.

Morgenstein & Jubelirer, William J. Carroll and Jennifer K. Achtert for Defendant and Respondent.

OPINION

CHIN, J.— ■ In this action, we address whether an employee of the Regents of the University of California (the Regents) must exhaust university internal administrative remedies before filing suit in superior court for retaliatory termination under either Government Code section 12653, subdivision (c), or Labor Code section 1102.5, sometimes called the "whistleblower" statutes. We conclude the exhaustion rule requires university employees to exhaust university administrative remedies before proceeding to suit. We therefore affirm the judgment of the Court of Appeal.

## I. FACTUAL BACKGROUND

Appellant Janet Campbell worked for the Regents as a senior architect in the Architectural Design and Engineering Unit of the Facilities Management Department (FMD) at the University of California, San Francisco (UCSF). The Regents, a state government entity, administer the University of California, including UCSF. (See *California Medical Assn. v. Regents of University of California* (2000) 79 Cal.App.4th 542, 544, fn. 1 [94 Cal.Rptr.2d 194].) Campbell's job duties included reviewing architectural plans and specifications for all campus construction projects costing less than $250,000, to ensure that the projects complied with competitive bidding laws. Campbell claims that in 1991, her supervisor at the FMD, acting on the Regents' behalf, directed her to prepare or help prepare bid documents that limited competition by using restrictive specifications. Campbell protested to the Regents on several occasions that using these documents to limit the bidding violated state competitive bidding laws. (See Pub. Contract Code, § 3400 [prohibiting state agencies from limiting contract bidding "to any one specific concern"].) She later reported the alleged violations to the Federal Bureau of Investigation (FBI).

In 1997, the FBI questioned UCSF officials about the alleged violations. The Regents then changed Campbell's job duties, assigning her to what she perceived to be menial, less challenging projects. Campbell soon went on extended disability leave. Shortly after she returned to work, in January 1999, she was discharged. The Regents blamed her discharge on downsizing. Campbell claimed that less senior and less qualified coworkers were retained, however.

On March 4, 1999, Campbell, through her attorney, filed an internal complaint against UCSF and her supervisors. The complaint, filed under the grievance procedures set forth in UCSF's Personnel Policies for Staff Members (PPSM), alleged, among other things, that Campbell was discharged in retaliation for being a whistleblower.

On April 23, 1999, a UCSF staff member responded to the complaint in a letter to Campbell's attorney (the letter). The letter stated that the PPSM's complaint resolution process excluded allegations of retaliation for whistle-blowing. The letter observed that such complaints were properly filed under UCSF's Policy and Procedures for Reporting Improper Governmental Activities and Protection Against Retaliation for Reporting Improper Activities (Policy and Procedures). The letter also stated, "Alleged violations of state and federal laws will be excluded from the [PPSM's] complaint resolution process." A copy of the applicable Policy and Procedures was enclosed with the letter. Campbell did not refile her complaint under the Policy and Procedures, as the letter directed.

Section IX (A) of the Policy and Procedures sent to Campbell states that "Any UC employee . . . may file a written complaint against a University employee alleging threatened or actual interference or retaliation resulting from the reporting of improper activities. . . . Retaliation is defined as the use of official authority or influence by a UC employee for the purpose of interfering with the right of a person to file a report as described in Section V above, or the right to file such a report with the University Auditor or with the Auditor General of the State of California, or with other public officials designated to receive reports of improper activity. Use of 'official authority to influence' includes promising to confer, or conferring, any benefit; effecting or threatening to effect any reprisal; or taking, or directing others to take, or recommending, processing or approving any personnel action, including but not limited to appointment, promotion, transfer assignment, performance evaluation, suspension, or other disciplinary action."

The balance of section IX (A) contains provisions governing the complaint's contents. Immediately following that section is a paragraph titled, "Use of Existing Mechanisms." This paragraph states in pertinent part: "A complaint of retaliation/interference must be filed under existing University grievance or complaint resolution procedures . . . if acceptable under those procedures. If the complaint is not within the scope of any complaint resolution procedure available to the complainant under the appeals mechanism described in the previous paragraph, or if the complainant is an applicant for employment or does not have a complaint resolution procedure available for some other reason, the complaint may be filed under this policy."

The letter therefore informed Campbell that the typical personnel manual grievance procedure did not apply to her grievance because she alleged state law violations. It also told her that she was required to file her grievance under the Policy and Procedures.

On June 7, 2000, Campbell filed a whistleblower complaint against the Regents in San Francisco Superior Court, seeking damages for retaliatory termination under Government Code section 12653 and Labor Code section 1102.5. She alleged that she had either exhausted all administrative remedies or was not required to exhaust them. The Regents demurred to the complaint on the ground that Campbell's refusal to file a grievance under the Policy and Procedures, as the letter directed, amounted to a failure to exhaust administrative remedies. The trial court sustained the demurrer. It granted Campbell leave to amend her complaint to allege either that she had fulfilled the exhaustion requirement, or that an exception to the requirement excused her from its application.

Campbell's first amended complaint alleged that she had filed an internal grievance complaint under the PPSM; that Government Code section 12653 and Labor Code section 1102.5 did not require her to exhaust UCSF's administrative remedies; and that the letter informed her that the PPSM excluded her whistleblowing allegations. She also claimed that the letter did not advise her that if she failed initially to pursue the proper administrative remedies for the whistleblowing claim, she would be precluded from taking legal action. The Regents again demurred to the amended complaint on the ground that Campbell failed to exhaust her administrative remedies.

The trial court sustained the Regents' demurrer to the first amended complaint. It gave Campbell leave to amend in order to plead that the futility doctrine excused her failure to exhaust, and that the Regents did not notify her of the relevant grievance procedures.

Campbell filed a second amended complaint, alleging that the principles of estoppel excused her from complying with exhaustion requirements because the Regents had failed to inform her of "the necessity to file a grievance under the whistle-blowing policy." The Regents demurred to that complaint on the grounds that Campbell failed to allege that exhaustion would have been futile, and that she was properly advised of the applicable grievance procedures. The trial court sustained the Regents' demurrer to the second amended complaint without leave to amend and entered judgment in the Regents' favor.

Campbell appealed. The Court of Appeal affirmed the trial court's dismissal for failure to exhaust administrative remedies. We granted Campbell's petition for review.

## II. DISCUSSION

### A. *Procedural Background*

■ When reviewing a judgment dismissing a complaint after a successful demurrer, we assume the complaint's properly pleaded or implied factual allegations are true, and we give the complaint a reasonable interpretation, reading it in context. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569] (*Schifando*).) We also consider judicially noticeable matters. (*Ibid.*) If we see a reasonable possibility that the plaintiff could cure the defect by amendment, then we conclude that the trial court abused its discretion in denying leave to amend. If we determine otherwise, then we conclude it did not. (*Ibid.*) The plaintiff has the burden of proving that an amendment would cure the defect. (*Ibid.*)

### B. *The Regents' Constitutional Authority*

■ Because the present action involves the rights of a UCSF employee, we should note the Regents' constitutional status. The California Constitution establishes the Regents as a "public trust . . . with full powers of organization and government." (Cal. Const., art. IX, § 9, subd. (a).) We have observed that "Article IX, section 9, grants the [R]egents broad powers to organize and govern the university and limits the Legislature's power to regulate either the university or the [R]egents. This contrasts with the comprehensive power of regulation the Legislature possesses over other state agencies." (*San Francisco Labor Council v. Regents of University of California* (1980) 26 Cal.3d 785, 788 [163 Cal.Rptr. 460, 608 P.2d 277] (*Labor Council*) [the Regents are not bound by Education Code section 92611 when setting wage levels].) This grant of constitutional power to the University includes the grant of quasi-judicial powers, a view that is generally accepted in our jurisprudence. (*Ishimatsu v. Regents of University of California* (1968) 266 Cal.App.2d 854, 864 [72 Cal.Rptr. 756]; see also *Apte v. Regents of University of California* (1988) 198 Cal.App.3d 1084, 1091 [244 Cal.Rptr. 312].)

The Regents may also exercise quasi-legislative powers, subject to legislative regulation. Indeed, "policies established by the Regents as matters of internal regulation may enjoy a status equivalent to that of state statutes." (*Regents of University of California v. City of Santa Monica* (1978) 77 Cal.App.3d 130, 135 [143 Cal.Rptr. 276], citing *Hamilton v. Regents* (1934) 293 U.S. 245 [79 L.Ed. 343, 55 S.Ct. 197].) The authority granted the Regents includes "full powers of organization and government, subject only to such legislative control as may be necessary to insure compliance with the terms of the endowment of the University and the security of its funds."

(*Goldberg v. Regents of University of California* (1967) 248 Cal.App.2d 867, 874 [57 Cal.Rptr. 463].) Thus, "[t]he Regents have been characterized as 'a branch of the state itself' [citation] or 'a statewide administrative agency' [citation]" (*Regents of University of California v. City of Santa Monica, supra,* 77 Cal.App.3d at p. 135), and "[i]t is apparent that the Regents as a constitutionally created arm of the state have virtual autonomy in self-governance" (*ibid.*). Therefore, "[t]he Regents have the general rule-making or policy-making power in regard to the University [citation], and are (with exceptions not material here) fully empowered with respect to the organization and government of the University." (*Goldberg, supra,* 248 Cal.App.2d at p. 874.) The Regents may create a policy for handling whistleblower claims under their power to organize and govern the University. Such a policy is treated as a statute in order to determine whether the exhaustion doctrine applies.

■ The Regents are not entirely autonomous. The Legislature may regulate the Regents' actions in three areas: (1) the Regents cannot compel appropriations for university salaries, because the Legislature is vested with the power of appropriation; (2) statutes that express the state's general police power, such as workers' compensation laws, apply to the Regents; and (3) when legislation regulating public agency activity addresses matters of statewide concern not involving internal university affairs, the legislation may be made applicable to the Regents. (*Labor Council, supra,* 26 Cal.3d at p. 789.)

## C. *The Rule of Exhaustion of Administrative Remedies*

■ As the Court of Appeal observed, the rule of exhaustion of adminis-trative remedies is well established in California jurisprudence, and should apply to Campbell's action. "In brief, the rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942] (*Abelleira*).) The rule "is not a matter of judicial discretion, but is a fundamental rule of procedure . . . binding upon all courts." (*Id.* at p. 293.) We have emphasized that "Exhaustion of *administrative* remedies is 'a jurisdictional prerequisite to resort to the courts.' [Citation]." (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 70 [99 Cal.Rptr.2d 316, 5 P.3d 874].) "The gist of *Westlake, Rojo,* and *Moreno*[1] is a respect for internal grievance procedures and the exhaustion requirement where the Legislature has not specifically mandated its own administrative review process . . . ."

---

[1] *Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465 [131 Cal.Rptr. 90, 551 P.2d 410] (*Westlake*); *Rojo v. Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373]; *Moreno v. Cairns* (1942) 20 Cal.2d 531 [127 P.2d 914].

(*Schifando, supra,* 31 Cal.4th at p. 1092.) The exhaustion rule extends to employees seeking judicial review of an employer's administrative findings. (*Johnson v. City of Loma Linda, supra,* 24 Cal.4th at p. 70.)

The rule has important benefits: (1) it serves the salutary function of mitigating damages; (2) it recognizes the quasi-judicial tribunal's expertise; and (3) it promotes judicial economy by unearthing the relevant evidence and by providing a record should there be a review of the case. (*Westlake, supra,* 17 Cal.3d at p. 476.)

█ As the Court of Appeal noted, the administrative remedies exhaustion rule has several exceptions, including, but not limited to, those Campbell raises: (1) when the administrative agency cannot provide an adequate remedy, and (2) when the subject of controversy lies outside the agency's jurisdiction. (*Edgren v. Regents of University of California* (1984) 158 Cal.App.3d 515, 520–521 [205 Cal.Rptr. 6] (*Edgren*).) These exceptions remain flexible and are by no means limited to those discussed here. (*Ogo Associates v. City of Torrance* (1974) 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761].)

### D. *Campbell's Contentions*

#### 1. *General principles*

Campbell initially asserts that the exhaustion rule does not apply here because the Regents provide inadequate administrative remedies and because her remedies lie outside the Regents' jurisdiction. She also claims that two antiretaliation statutes the Legislature has enacted have superseded the exhaustion rule. As to the latter assertion, Campbell points to no specific provision in either statute. Rather, she asks this court to infer an exemption from the Legislature's statutory language allegedly authorizing direct access to the courts, in this and arguably related contexts. We address her claims separately.[2]

---

[2] The Regents initially assert that Campbell waived her contention that her statutory retaliation claim is not subject to the exhaustion requirement because, although she raised the contention in her first amended complaint, she did not appeal the trial court's ruling sustaining the Regents' demurrer to that complaint with leave to amend. Instead, as discussed above, she filed a second amended complaint alleging she was excused from the exhaustion requirement, arguably a separate contention. The Court of Appeal did not address the waiver question, and we decline to do so here because Campbell's failure to exhaust administrative remedies presents a jurisdictional question related to her statutory claims, and we may review it at any point in the proceedings. (See *Inland Empire Health Plan v. Superior Court* (2003) 108 Cal.App.4th 588, 592 [133 Cal.Rptr.2d 735].)

## 2. *Alleged inadequate remedy*

Campbell initially asserts that she should have direct access to the courts because she seeks not only reinstatement and back wages, but also money damages. Campbell does not as a general matter dispute the adequacy of the Regent's remedial procedures. Rather, she claims the exhaustion rule should not apply to her because "The administrative remedy will always be inadequate compared to the damages remedy made expressly available to an aggrieved employee by the Legislature under either Government Code section 12653(c) or Labor Code section 1102.5." Not so. The Regents' Policy and Procedures allow the Regents to provide the complainant with "any appropriate relief" and to impose any sanctions on the offending employees "in accordance with existing disciplinary policies or contract provisions."

■ In addition, even though Campbell's complaint seeks money damages in addition to reinstatement, our cases hold that the "policy considerations which support the imposition of a general exhaustion requirement remain compelling . . . ." (*Westlake, supra,* 17 Cal.3d at p. 476.) The logic holds even when no internal damage remedy is available, or a plaintiff seeks only money damages, so that resort to the courts is inevitable. As *Edgren* explains, courts have found the rule inapplicable only when the agency lacks authority to hear the complaint, not when the administrative procedures arguably limit the remedy the agency may award. (*Edgren, supra,* 158 Cal.App.3d at p. 521; see also *Glendale City Employees' Assn., Inc. v. City of Glendale* (1975) 15 Cal.3d 328, 342–343 [124 Cal.Rptr. 513, 540 P.2d 609] [exhaustion rule does not apply when resolution of controversy falls outside scope of grievance procedures].) We believe that the "administrative proceeding will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review." (*Westlake, supra,* 17 Cal.3d at p. 476.)

We also disagree that Campbell is exempt because the Regents lack jurisdiction. *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211 [188 Cal.Rptr. 115, 655 P.2d 317] provides an example of the exception an agency's lack of jurisdiction creates. In *Tiernan,* a temporary academic employee's term was not renewed. In her grievance she alleged that the law required her employer to adopt regulations governing notice of nonreappointment. The court found that the plaintiff's claim fell within the jurisdictional exception because it required the grievance committee to determine whether the university had to adopt regulations or interpret established regulations. In such a case, the grievance committee could deny a claim on purely procedural grounds. (*Id.* at p. 218.) By contrast, Campbell's action does not require the Regents' internal review board to decide the legality of current employer policies before considering the legality of the employer's actions.

*Abelleira, supra,* 17 Cal.2d 280, is also instructive. In *Abelleira,* a group of unemployed San Francisco dock workers petitioned for a writ of prohibition to restrain the Court of Appeal from enforcing a writ of mandate that it had issued against the California Employment Commission and in favor of their employer. The Court of Appeal determined that the commission acted beyond its statutory powers in requiring the workers to first satisfy the commission's administrative procedures. Thus, the commission had no jurisdiction to determine whether the dock workers were entitled to unemployment benefits. (*Id.* at p. 285.) In reversing the Court of Appeal judgment, we held that the commission did have jurisdiction to make this determination, and that the dock workers correctly sought administrative review before filing their claim for benefits. (*Id.* at p. 291.) In so doing, we observed that the Unemployment Insurance Act provided for an administrative procedure. (*Ibid.*) The claim therefore fell under the exhaustion of administrative remedies rule. (*Id.* at p. 292.)

█ The present action involves a policy the Regents established to handle complaints of retaliatory dismissal for whistleblowing in an orderly manner. Because we may treat such a policy as equivalent to a statute in this action, and because that policy required Campbell to resort initially to internal grievance practices and procedures, Campbell had an administrative remedy within the meaning of *Abelleira* and its progeny.

3. *Construction of Government Code section 12653, subdivision (c), and Labor Code section 1102.5*

█ Campbell next contends that neither Government Code section 12653, subdivision (c), nor Labor Code section 1102.5 requires her to exhaust her administrative remedies, and that the Legislature therefore intended to abrogate the exhaustion requirement for actions such as hers. Because Campbell's argument requires us to construe two statutes, "we must ' "ascertain the intent of the lawmakers so as to effectuate the purpose of [each] law." ' [Citations.] We begin by examining the language of [each] statute [separately], giving the words their ordinary meaning. [Citation.] 'The words, however, must be read in context, considering the nature and purpose of the statutory enactment[s].' [Citation.] In this regard, sentences are not to be viewed in isolation but in light of the statutory scheme. [Citation.]" (*Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 777 [63 Cal.Rptr.2d 859, 937 P.2d 290] (*Torres*).)

### a. *Government Code section 12653, subdivision (c)*

 Government Code section 12653[3] is part of the False Claims Act (Gov. Code, §§ 12650–12656) (the Act). The Act protects public funds by authorizing employee informants who discover fraudulent claims made against state and local governmental entities to file qui tam suits on behalf of those entities. (E.g., *City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1672, fn. 2 [1 Cal.Rptr.3d 312] [defining qui tam as part of a Latin phrase meaning one "who brings the action for the king as well as for himself"].) Qui tam plaintiffs sue as informers under a statute on behalf of themselves and the State of California. Qui tam plaintiffs may recover damages and penalties on behalf of public entities for themselves and the entities. (*Id.* at p. 1677.)

 Section 12653 addresses employer interference with employee disclosures of false claims. Section 12653, subdivision (b), provides in pertinent part that no employer may discharge an employee because that employee has acted lawfully in disclosing false claims to law enforcement agencies. Section 12653, subdivision (c), states that an employer who violates subdivision (b) shall be liable to pay all the employee's costs and damages, including litigation costs and attorney fees. The last sentence of subdivision (c) provides, "An employee may bring an action in the appropriate superior court of the state for the relief provided in this subdivision." Campbell contends that by operation of the rules of statutory construction, this sentence relieved her of any requirement to exhaust administrative remedies. Her contention fails, however, because it ignores the sentence's context.

As the Court of Appeal observed, Campbell presents no direct authority supporting her position. Instead, she compares section 12653, subdivision (c), with sections 12652, subdivision (d)(4), and 8547.10, in order to argue that the Legislature intended to abrogate the exhaustion requirement in her action. To analyze her argument, therefore, we first study section 12652's relevant content.

Section 12652 sets forth procedures for the Attorney General to follow in suing persons who have knowingly made a false claim for payment against the government and performed other acts that violate section 12651. The Attorney General must serve notice on the prosecuting authority of a political subdivision if the false claim involved that entity's funds as well as state funds. (§ 12652, subd. (a)(2).) The prosecuting authority may intervene in the suit. (§ 12652, subd. (a)(3).) A prosecuting authority that initiates a civil action for violation of section 12651 must notify the Attorney General, who

---

[3] Subsequent statutory references are to the Government Code unless otherwise specified.

may take primary responsibility for maintaining the action. (§ 12652, subd. (b)(2), (3).) A person may bring a civil action for a percentage of the proceeds for a violation "of this article" as a qui tam plaintiff. (§ 12652, subd. (c)(1).) "Once filed, the action may be dismissed only with the written consent of the court . . . ." (*Ibid.*) Qui tam plaintiffs shall file their complaints in superior court in camera. The statute gives the Attorney General and any involved political subdivision 60 days to decide whether to proceed with the action. If the Attorney General's office or the government agency does so, it takes primary responsibility for prosecuting the action. It may then dismiss or settle the action without the qui tam plaintiff's consent. (§ 12652, subds. (c)(4), (6), (e).)

Section 12652, subdivision (d)(4), explicitly provides, "No court shall have jurisdiction over [a qui tam action] based upon information discovered by a present or former employee of [the government] during the course of his or her employment *unless that employee first, in good faith, exhausted existing internal procedures for reporting and seeking recovery of the falsely claimed sums through official channels and unless [the government] failed to act on the information provided within a reasonable period of time*." (Italics added.) As the Regents observe, this disclosure requirement for qui tam plaintiffs is designed to prevent unjust enrichment of public employees who may have access to information concerning false claims and who may be uniquely situated to detect fraud. Therefore, before employees may reap the financial rewards that are available to qui tam plaintiffs, they must first apprise their public employer of the false claims and allow it to investigate and seek to recover any falsely claimed sums. Employees may proceed as qui tam plaintiffs against a defrauding party only if they have advised their public employer of the alleged fraud and it has failed to act. (§ 12562, subd. (d)(4).)

Campbell characterizes the disclosure requirement for qui tam plaintiffs as a statutory requirement to exhaust administrative remedies. But she misunderstands the statute. Although it contains the words "exhausted" and "internal procedures," the statute does not address employees' grievances in cases where employees must seek administrative remedies. The qui tam plaintiff disclosure requirements are unique to the qui tam setting. They ensure that public employers will have the opportunity to investigate and pursue fraud claims against third parties before the employees can initiate any qui tam action against those parties. In other words, section 12652, subdivision (d)(4), concerns administrative *procedures* that employees must follow when they report false claims that third parties have made against the government and recover funds they have lost. By contrast, the cases from *Westlake* to *Schifando* concern administrative *remedies* that an employer provides when an employee has a grievance against it. Because section 12652, subdivision (d)(4), does not address an employee's remedy for an alleged grievance,

it is irrelevant to our interpretation of section 12653, subdivision (c), regarding application of the exhaustion rule.

■ Campbell's reliance on the specific exhaustion requirements in section 8547.10, subdivision (c), of the California Whistleblower Protection Act is equally unavailing. That statute provides that any person who intentionally retaliates against a University of California employee for "having made a protected disclosure" shall be liable for damages in an action the injured employee may bring. (*Ibid.*) Section 8547.2 defines the term "protected disclosure" as "any good faith communication that discloses or demonstrates an intention to disclose information" about improper governmental activity or any condition that threatens public or employee health or safety. (§ 8547.2, subd. (d).) This definition does not exclude communications to governmental or law enforcement agencies.[4]

As the Regents observe, the statute permits aggrieved university employees to file a damages action provided they have followed the administrative procedures and filed an administrative complaint before filing their lawsuit. (§ 8547.10, subd. (a).) Of note here, the employee may not proceed with a court action against the university unless that institution has failed to reach an administrative decision on the action within specified time limits. (§ 8547.10, subd. (c).) In such a case, the employee may file a lawsuit for damages even though the administrative complaint is pending. If, by contrast, the university has reached a decision on the administrative action, the statute does not authorize any statutory damages action.

Campbell contends that because section 8547.10, subdivision (c), includes an explicit exhaustion requirement, section 12653, subdivision (c)'s silence on the issue must be deliberate. She claims we are thus required to find that the latter statute does not require her to have exhausted her administrative remedies before filing the present action. We disagree. By enacting section 8547.10, the Legislature created a specific exception to the administrative remedy rule. This exemption was intended to augment other internal administrative procedures available to university employees. As the Court of Appeal observed, the express mention in one statute of a fundamental precondition of filing suit against an administrative agency does not abrogate that requirement in every statute that is silent on the matter. (*Flores v. Los Angeles Turf Club* (1961) 55 Cal.2d 736, 746–747 [13 Cal.Rptr. 201, 361 P.2d 921] [legislative silence on the exhaustion requirement does not manifest a legislative intent to

---

[4] Section 8547.10 was amended by Statutes 1999, chapter 673, section 7, so that "made a protected disclosure" replaced the term "disclosed improper governmental activities." The same bill added the definition of "protected disclosure" to section 8547.2. The change in terminology does not change our analysis of the effect of section 8547.10, subdivision (c), on the present action.

eliminate it]; see also *A. Teichert & Son, Inc. v. State of Cal.* (1965) 238 Cal.App.2d 736, 746 [48 Cal.Rptr. 225], disapproved on another ground by *E.H. Morrill Co. v. State of California* (1967) 65 Cal.2d 787, 792 [56 Cal.Rptr. 479, 423 P.2d 551].) The Legislature's language in the context of section 8547.10 says nothing about its intent under section 12653, subdivision (c). Indeed, the Legislature's silence in the latter statute makes the common law exhaustion rule applicable here and requires employees to exhaust their internal administrative remedies prior to filing a lawsuit.

Campbell also mistakenly relies on *Hentzel v. Singer Co.* (1982) 138 Cal.App.3d 290, 293 [188 Cal.Rptr. 159] (*Hentzel*), contending it holds that courts will not impose an administrative remedies exhaustion requirement unless the statute specifically mandates one. In *Hentzel*, the employee plaintiff sued for wrongful discharge, alleging four common law causes of action. (*Id.* at p. 293.) The Court of Appeal addressed the tort cause of action for wrongful discharge in retaliation for the plaintiff's attempt to obtain a reasonably smoke-free work environment. The employee's allegation brought him within the scope of Labor Code section 6310, which is part of the California Occupational Safety and Health Act legislation. Labor Code section 6312 provides an administrative remedy for an employee who is discharged in violation of Labor Code section 6310. (Lab. Code, § 6312 [upon complaint, Division of Labor Standards Enforcement shall investigate; if a violation of Labor Code, section 6310 is found, it shall bring an action on behalf of employee for back wages and injunctive relief].) The defendant employer claimed the plaintiff's failure to satisfy exhaustion requirements barred the lawsuit. (*Hentzel, supra,* 138 Cal.App.3d at p. 300.)

The *Hentzel* court found that the suit was not barred. It held that "[w]here a statute creates a right that did not exist at common law, and provides a comprehensive system of administrative enforcement, a requirement that administrative remedies be exhausted may be implied. [Citation.] But, generally, 'where a statutory remedy is provided for the enforcement of a pre-existing *common-law* right, the newer statutory remedy will be considered only cumulative.' " (*Hentzel, supra,* 138 Cal.App.3d at p. 303.)

Campbell did not plead a wrongful discharge common law tort. Her amended complaint sought damages under section 12653 and Labor Code section 1102.5, statutes that create a right that did not exist at common law. Similarly, UCSF's Policies and Procedures, which are equivalent to a statute, also create a right that did not exist at common law and provide a comprehensive system of administrative enforcement. Under *Hentzel*'s rationale, we may infer a requirement that Campbell exhaust administrative remedies. (See also *Grant v. Superior Court* (1978) 80 Cal.App.3d 606, 609 [145 Cal.Rptr. 699] [finding exhaustion doctrine applies under Public Resources Code

section 30801 even though statute is silent on doctrine and Legislature provides no express exemption from it].)

### b. *Labor Code section 1102.5*

 Campbell also seeks relief under Labor Code section 1102.5.[5] Subdivision (b) of that section provides that no employer may retaliate against an employee for disclosing to a government or law enforcement agency information about violations of law or failure to comply with regulations. For purposes of Labor Code sections 1102.5 to 1105, Labor Code section 1106 defines "employee" as including employees of the University of California.

Labor Code section 1105 states, "Nothing in this chapter shall prevent the injured employee from recovering damages from his employer for injury suffered through a violation of this chapter." Campbell contends that this provision, together with the chapter's silence on administrative remedies, the effect of which we discuss *ante,* at page 326, means that employees need not satisfy any exhaustion requirement before they may file a lawsuit under Labor Code section 1102.5.

But this contention also ignores the provision's context. Labor Code section 1103 provides misdemeanor criminal penalties for a violation of the chapter. Labor Code section 1104 makes the employer responsible for the acts of all managers, agents, and employees "[i]n all prosecutions under this chapter." The placement of Labor Code section 1105 immediately after the provisions for criminal prosecution of violations of the chapter seems intended to preserve employees' rights to file civil complaints for such violations. The context of Labor Code section 1105, as well as the past 60 years of California law on administrative remedies, argues against its abrogating the exhaustion requirement.

 In addition, Labor Code section 1102.5's silence on the exhaustion requirement does not change our interpretation. As discussed *ante,* at page 327, and as *Torres* recognized, "courts should not presume the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless that intention is made clearly to appear either by express declaration or by necessary implication." (*Torres, supra,* 15 Cal.4th at p. 779.)

---

[5] As the Regents observe in their letter brief of September 10, 2004, the Legislature recently amended Labor Code sections 1102.5 and 1106 in order to add a number of whistleblower-related provisions and additional penalties. (Lab. Code, §§ 1102.5, 1106, amended by Stats. 2003, ch. 484, §§ 2, 7.) The amendments, however, do not mention exhaustion requirements, nor do they suggest that the exhaustion rule is inapplicable to whistleblower actions filed under section 1102.5.

Campbell also asserts that the legislative history of Assembly Bill No. 3486 (1991–1992 Reg. Sess.), later codified as Labor Code section 1106, shows that the Legislature intended Labor Code section 1102.5 to except University of California employees from the requirement to exhaust administrative remedies. As noted above, statutory construction begins with the statute's language. (*Torres, supra*, 15 Cal.4th at p. 777.) In 2000, when Campbell filed her superior court suit, Labor Code section 1106 stated in part: "For purposes of Sections 1102.5, 1103, 1104, and 1105, 'employee' includes, but is not limited to, any individual employed by . . . the University of California." The statute's plain language also does not support Campbell's contention. The addition of section 1106 to the Labor Code was intended to extend the rights available to private employees to include public employees, and nothing more.

Campbell argues otherwise. She emphasizes that the Assembly Committee on Labor and Employment, chaired by the bill's author, did report on April 8, 1992, that the bill would give public employees the right to file a private action without having to exhaust administrative remedies. The Assembly Ways and Means Committee repeated this analysis on May 20, 1992. (Assem. Com. on Ways and Means, Analysis of Assem. Bill No. 3486 (1991–1992 Reg. Sess.) as amended Apr. 21, 1992, p. 1.)

But when the bill reached the Senate, the analysis no longer mentioned the exhaustion of administrative remedies. The Senate Committee on Industrial Relations explained that, while existing law prohibited employers from retaliating against employees who disclosed to governmental or law enforcement agencies information relating to violations of state or federal law, "These provisions are silent as to their applicability to public employees. Generally, however, provisions of the Labor Code apply only to employees in the private sector unless they are specifically made applicable to public employees." (Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 3486 (1991–1992 Reg. Sess.) as amended Apr. 21, 1992, p. 2.) The report explained that the bill arose from a case in which a local building inspector complained of retaliation because he reported to the police that his supervisor had ordered him to violate the building inspection law. (*Id.* at p. 3.) The district attorney declined to prosecute the supervisor, however, because the Labor Code's antiretaliation provisions applied to private sector employees only. (*Ibid.*)

The Senate Rules Committee's third reading analysis reported these arguments to support the bill: It would give public employees the same right of redress against retaliation for whistleblowing as the private sector enjoys; it would encourage employees to report illegal activities without fear of retaliation; state employees' existing remedies were meaningless because they

were required to prove malice; public employees had little protection because they had to file a complaint following the local agency's procedures, and the supervisor who was responsible for the retaliation often heard the first level of grievance. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 3486 (1991–1992 Reg. Sess.) as amended Apr. 21, 1992, pp. 2–3.) The Assembly Committee on Labor and Employment, chaired by the bill's author, offered a fact sheet on Assembly Bill No. 3486 as amended (1991–1992 Reg. Sess.), which included this question and answer: "Doesn't this bill produce a duplication of procedures? No. A public employer may still require whistleblowers to follow their current procedures. This bill just empowers prosecutors and whistleblowers to seek court action without proving malice." (Assem. Com. on Labor and Employment, Fact Sheet on Assem. Bill No. 3486 (1991–1992 Reg. Sess.) Apr. 21, 1992, p. 1.) The Senate floor statement on the bill reiterated the argument about eliminating the need to prove malice in a prosecution; it did not mention elimination of the requirement to exhaust administrative remedies. (*Id.* at p. 2.) In sum, the legislative history is equivocal, initially indicating that the bill's author intended the bill to abrogate the exhaustion requirement, but later on revealing that the Legislature may have rejected that intent in the statute it actually enacted. In our view, therefore, the legislative history appears unclear on the question whether the Legislature intended to depart from the exhaustion doctrine when it drafted Assembly Bill No. 3486, and we cannot read that intent into the statute when the history does not clearly support it.

### 4. *Choice of remedies*

Campbell alternatively contends that even if we find an "implied" administrative remedies exhaustion requirement under section 12653 subdivision (c), and Labor Code section 1102.5, she should be able to choose between pursuing an administrative or a judicial remedy. To support her contention, she relies on *City of Susanville v. Lee C. Hess Co.* (1955) 45 Cal.2d 684, 689 [290 P.2d 520] (*Susanville*).

In *Susanville*, a city council had awarded the respondent a contract for public improvements. Four days later, at a special meeting held without notice to the respondent, the council passed a resolution declaring the respondent to be an unlicensed contractor unqualified to bid, and awarded the contract to another bidder. The city then brought an action against the respondent in superior court, in accord with the provisions of former Streets and Highways Code sections 5265 to 5270.[6] The superior court found in

---

[6] Former Streets and Highways Code section 5265 provided that "the legislative body conducting the proceedings may bring an action in the superior court . . . to determine the validity of such proceedings and . . . of any contract entered . . . pursuant thereto." Former

favor of the city. When respondent appealed to this court, the city argued that the respondent had failed to exhaust its administrative remedy as required by Streets and Highways Code section 5003 because the statute provided that the exclusive remedy of anyone aggrieved by error, irregularity, informality, neglect, or omission in the proceedings which awarded a public improvements contract, shall be by appeal to the legislative body. (*Susanville, supra,* 45 Cal.2d at p. 690.) We rejected the city's contention and found that the former Streets and Highways Code provided for an alternative remedy. We held: "It is equally well settled that where a statute provides an administrative remedy and also provides an alternative judicial remedy the rule requiring exhaustion of the administrative remedy has no application if the person aggrieved and having both remedies afforded him by the same statute, elects to use the judicial one." (*Id.* at p. 689.) *Susanville* is inapposite. In the present action, no legislation corresponds to the detailed procedures for judicial remedy found in the former Streets and Highways Code provisions.

### 5. *Equal protection*

 Campbell also asserts that requiring public employees who disclose false claims against a public entity to exhaust their administrative remedies when seeking redress for retaliation places a content-based restriction on their freedom of speech. Campbell contends that by treating public employee whistleblowing differently from private employee whistleblowing, the lower court made an impermissible content-based discrimination against a type of speech. (See *Police Dept. of Chicago v. Mosley* (1968) 408 U.S. 92, 95 [33 L.Ed.2d 212, 92 S.Ct. 2286].) *Mosley* found unconstitutional an ordinance that prohibited non-labor picketing. (*Ibid.*) But requiring public employees to exhaust their administrative remedies as a prerequisite to pursuing their claims of retaliatory discharge in superior court does not restrict their freedom to disclose false claims.

Campbell also contends that the exhaustion requirement selectively discriminates on the basis of viewpoint because it precludes lawsuits against public entities. This claim misstates the effect of the exhaustion requirement, because judicial review of the administrative determination is available via administrative mandamus. (Code Civ. Proc., § 1094.5.)

---

section 5266 provided that the contractor might also bring such an action. Former section 5267 specified that the action was in rem and specified that summons was by publication. Former section 5268 provided that anyone might appear and contest or uphold the validity of the proceedings and of the contract. Former section 5269 provided whom to serve if the contractor brought the action. Former section 5270 provided that appeal might be made to the Supreme Court, and provided the time limit for actions and appeals.

## III. CONCLUSION

We conclude that absent a clear indication of legislative intent, we should refrain from inferring a statutory exemption from our settled rule requiring exhaustion of administrative remedies. Campbell has not shown that she either attempted to exhaust her administrative remedies or that she should be excused from doing so. We therefore find that Campbell has not shown that she could cure the defects in her second amended complaint by amendment, even though the trial court gave her ample opportunity to do so, and we find no abuse of discretion in the trial court's denying leave to amend. We hold that Campbell should have exhausted the university's administrative remedies before proceeding to suit, and affirm the Court of Appeal's judgment.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.

Appellant's petition for a rehearing was denied May 18, 2005.