[No. F056975. Fifth Dist. Aug. 4, 2009.]

KAREN VICTORIA DAHLBERG WYNN, Plaintiff and Appellant, v. THE SUPERIOR COURT OF FRESNO COUNTY, Defendant and Respondent.

[redacted]

**COUNSEL**

California Indian Legal Services, Michele R. Fahley and Dorinda Strmiska for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

**OPINION**

**DAWSON, J.**—Karen Victoria Dahlberg Wynn (appellant) filed a petition in the superior court seeking an order correcting her original birth certificate to state the actual names of her birth parents rather than the fictitious names her mother used when the original certificate was prepared. Appellant's situation is unusual because her original birth certificate is sealed and her legally operative birth certificate lists her adoptive parents.

The superior court denied the petition on the ground that it lacked the legal authority to modify the original, sealed birth certificate because a subsequent certificate was in effect.

█ We conclude appellant qualifies as an interested person who may bring an action to adjudicate her parentage and, therefore, the superior court had the authority to adjudicate the facts concerning a possible biological relationship between mother and daughter. Furthermore, if the superior court determines appellant's original birth certificate is not accurate regarding her parentage, then it must order the issuance of a new birth certificate.

Accordingly, we will reverse the order denying appellant's petition and remand for further proceedings.

## FACTS AND PROCEEDINGS

In 1949, Beverly Jean Graham met and began dating appellant's biological father. She became pregnant with his child and gave birth to a daughter, appellant, in 1951.

Ms. Graham successfully hid her pregnancy from her family and friends. She also falsified her name and the name of the father on hospital documents to hide her daughter's birth from her family and the community. She gave her name as "Shirley Jones" and named "Edward Brown" as the father. Ms. Graham named her daughter Beverly Jean, after herself, and gave her the fictitious surname of Jones.

As a result, a certified copy of appellant's birth record (1) states appellant's name as "Beverly Jean Jones" in boxes 1A through 1C, (2) lists her mother's name as "Shirley Jones" in boxes 7A and 7C,[1] and (3) contains the signature of Beverly Jean Graham in box 17A, which is not designated as either the signature of a parent or "other informant."

In April 1951, Ms. Graham placed appellant into foster care and relinquished her for adoption.

Appellant was adopted by Mr. and Mrs. Dahlberg in November 1952. As a result of the adoption, a new certificate of live birth was issued.[2] The new

---

[1] Box 7B, for a middle name, contains a dash.

[2] Health and Safety Code section 102635, subdivision (a) provides that a "new birth certificate shall be established by the State Registrar upon receipt of . . . [¶] . . . [a] report of adoption . . . ." The new birth certificate supplants any previous birth certificate and is the only birth certificate open to the public. (*Id.*, § 102680.) The State Registrar shall maintain the

certificate, No. 51-035085, names appellant as Karen Victoria Dahlberg, states she was born in 1951, and identifies the Dahlbergs as her parents.

As a result of the adoption process, appellant's original birth record was sealed.

In 1981, appellant obtained the release of her adoption file, which revealed the true names of her biological parents. Also, appellant obtained an order from the Fresno Superior Court unsealing her birth record.

In 1987, appellant's biological father died.

In 2001, appellant contacted her biological mother and established an ongoing relationship. Ms. Graham supports the petition filed by appellant and filed a declaration in support of that petition. Ms. Graham's declaration states that she is an enrolled member of an Indian tribe.

The reason appellant filed the petition concerns her enrollment as a member of the Indian tribe. The enrollment office of the tribe is requiring appellant to provide it with an amended version of her original birth record that changes the name of her natural mother from the fictitious "Shirley Jones" to the correct name of "Beverly Jean Graham."

Appellant filed in the family law department of the Fresno Superior Court a verified request to amend her original birth record. Appellant requested the following relief: (1) Adjudication of the facts of her parentage and a finding that Beverly Jean Graham is her biological mother. (2) An order directing the issuance of a new birth certificate to resolve the difference between the finding and the contents of appellant's original birth certificate. (3) Such other and further relief as the court deemed just and proper.

The matter was heard by the superior court on December 8, 2008. No one appeared to oppose appellant's request. The superior court denied the petition, stating that the court's jurisdiction was limited and it did not think it "appropriate for the Court to correct an original birth certificate when that is meaningless for legal purposes, for the Court's purposes, because her new birth certificate [from the adoption] establishes who her legal parents are and I've never had a situation where anyone [has] asked to fix a birth certificate that no longer has any force and effect in terms of legal status of parent and child."

original record of birth with the report of adoption. (*Id.*, § 102700.) It is this original record of birth that appellant wishes to change.

On December 8, 2008, the superior court filed a minute order stating that the request to amend appellant's birth record was denied.

Appellant filed a notice of appeal in January 2009. No respondent has appeared before this court.

## DISCUSSION

### I. *Adequacy of an Administrative Remedy*

The first question we consider is whether appellant could correct her original birth certificate through an administrative procedure and whether, as a result, her request for judicial relief is barred by her failure to exhaust that administrative process. (See *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 321 [25 Cal.Rptr.3d 320, 106 P.3d 976] [where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act].)

Part 1 of division 102 of the Health and Safety Code addresses vital records, which include live birth registration, certificates of birth following adoption, death registration, marriage registration, and final decrees of dissolution of marriage. Chapter 11 of this part addresses the amendment of records. Article 1 of chapter 11 concerns the amendment of a record of birth, death or marriage.

Accordingly, we will examine the provisions in article 1 of chapter 11 of division 102 of part 1 of the Health and Safety Code (Health & Saf. Code, §§ 103225–103265) to determine whether it creates an administrative procedure that appellant could use to change the information on her original birth certificate.

### A. *Statutory Provisions Regarding Amendments to Correct Errors*

Health and Safety Code section 103225 provides that "[w]henever the facts are not correctly stated in any certificate of birth, . . . the person asserting that the error exists may make an affidavit under oath stating the changes necessary to make the record correct, . . . and file it with the state or local registrar."

■ The statute's reference to "any" certificate of birth appears broad enough to include both an original birth certificate as well as a "new birth certificate" established under Health and Safety Code section 102635 after an adoption has been completed. Therefore, section 103225 might create an administrative process that appellant could use to correct her original birth certificate.

The amendment process, however, is not available for all errors contained in birth certificates. Health and Safety Code section 103230 states the amendment through affidavit process applies to certificates of birth "only in the absence of conflicting information relative to parentage on the originally registered certificate of birth." Section 102155 defines the " 'absence of conflicting information relative to parentage' " to include "entries such as 'unknown,' 'not given,' 'refused to state,' or 'obviously fictitious names.' "[3]

Reading these provisions together, it appears that the amendment procedure is available to (1) add information not included in the original birth certificate, (2) correct typographical or spelling errors, and (3) correct statistical information about the parents, such as their age or state of birth.

### B. *Amendment Is Not Available to Appellant*

The statutes specifically provide that the amendment by affidavit procedure may not be used to correct an error on a birth certificate in the presence of conflicting information about the child's parentage. Thus, it appears amendments are not available to *change* the name of a parent listed on the originally registered certificate of birth unless that parent's name is obviously fictitious.

In this case, appellant seeks to change the name of the mother given on her originally registered certificate of birth. Any affidavits she would present with a request for an amendment would include information about her parentage that would conflict with her original birth certificate. Therefore, we conclude that the administrative remedy for correcting errors contained in Health and Safety Code section 103225 is not available to appellant. Accordingly, her failure to pursue such an amendment does not operate to bar the judicial relief requested in this action.

### II. *Jurisdiction to Adjudicate the Existence of a Mother and Child Relationship*

Appellant contends that the superior court has the authority to adjudicate who her biological mother is based on Family Code section 7650, subdivision (a), which provides in full: "Any interested person may bring an action to determine the existence or nonexistence of a mother and child relationship. Insofar as practicable, the provisions of this part applicable to the father and child relationship apply."

---

[3] We note that Health and Safety Code sections 102155, 103225 and 103230 have not been cited, much less discussed, in an opinion of a California appellate court.

■ First, we adopt the self-evident conclusion that a child necessarily is "interested" in determining who her biological mother is. (See *In re Karen C.* (2002) 101 Cal.App.4th 932 [124 Cal.Rptr.2d 677] [child was an interested person for purposes of determining existence of mother-daughter relationship with woman who was not her biological mother].) Furthermore, appellant is "interested" in the sense that she will stand to gain some rights as a result of the determination and the correction of her original birth certificate. Therefore, appellant qualifies as an "interested person" for purposes of Family Code section 7650, subdivision (a).

■ Second, we consider whether the determination of a biological mother-child relationship is outside the scope of the statute when the child has a legal mother as the result of an adoption. We resolve this question by examining the statutory language. Existing case law is not helpful because we have not located a case that addresses the narrow question presented by the facts of this case.

■ The statutory term "mother and child relationship" is included in the statutory term "parent and child relationship." (Fam. Code, § 7601.) " 'Parent and child relationship' " means "the legal relationship existing between a child and the child's natural *or* adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations." (*Ibid.*, italics added.)

This definition and its use of "or" as a connector leaves open the possibility that a child could have the requisite "legal relationship" with his or her natural parents as well as his or her adoptive parents. Therefore, we consider whether there are any legal relationships between a child and his or her biological parents after the child has been adopted.

■ We conclude the law recognizes some relationships between a child and his or her biological parents even after an adoption has occurred. This case was motivated by one such relationship—namely, biological parentage as the basis for enrollment in an Indian tribe. Furthermore, other, more general legal duties and obligations are established under California law based on blood relationships. (E.g., Fam. Code, § 2200 [marriage between certain blood relatives prohibited].) Therefore, even in the situation of someone who has been adopted, both the State of California and that individual have a reason for wanting the original birth certificate to reflect accurately the individual's biological parents.

In addition, the use of the article "a" before the term "mother and child relationship" in Family Code section 7650, subdivision (a) is consistent with the position that there is more than one mother and child relationship viewed as significant under the law. In contrast, use of the article "the" would have suggested that there was only one relevant mother and child relationship.

Based on the statutory language, we conclude that a superior court has the authority to adjudicate the existence of a biological mother-child relationship even when the child has been adopted.

III. *Jurisdiction to Order a New Birth Certificate*

The next question is whether a court that has adjudicated the existence of a biological mother-child relationship has the authority to enter an order directing the issuance of a new birth certificate. We conclude it does.

The last sentence of Family Code section 7650, subdivision (a) states that the provisions applicable to the determination of the father and child relationship also apply to determinations of a mother and child relationship. One of the provisions in part 3 (Uniform Parentage Act; Fam. Code, § 7600 et seq.) of division 12 (Parent and Child Relationship) of the Family Code applicable to the father and child relationship is section 7639, which states: "If the judgment or order of the court is at variance with the child's birth certificate, the court shall order that a new birth certificate be issued as prescribed in Article 2 (commencing with Section 102725) of Chapter 5 of Part 1 of Division 102 of the Health and Safety Code."

The mandatory language in this provision indicates that a superior court has both the authority and the obligation to order the issuance of a new birth certificate if its determination of the existence of a biological mother-child relationship differs from that shown on the child's original birth certificate.[4]

---

[4] To ease the administrative process of issuing the new birth certificate, practitioners who prevail on a petition for such an order and are directed by the court to submit a proposed order should be familiar with the October 2008 publication of the California Department of Public Health titled "Adjudication Of Facts Of Parentage" and the form titled "Application to Amend Birth Record—Adjudication of Facts of Parentage (VS 21)." The publication is available on the department's Web site <www.cdph.ca.gov> (as of Aug. 4, 2009).

## DISPOSITION

The December 8, 2008, order denying the motion to amend birth record is reversed and the matter remanded to the superior court to adjudicate the facts of appellant's parentage and, if appropriate, order the issuance of a new birth certificate to correct appellant's original birth certificate.

Wiseman, Acting P. J., and Kane, J., concurred.