[No. G041956. Fourth Dist., Div. Three. Dec. 23, 2010.]

JAMES SHEPPARD, Plaintiff and Appellant, v.
NORTH ORANGE COUNTY REGIONAL OCCUPATIONAL PROGRAM,
Defendant and Respondent.

## Counsel

Law Office of David J. Duchrow, David J. Duchrow, Jill A. Piano; Spencer Rice, The Spencer Law Firm, Marilynn Mika Spencer and Wayne J. Rice for Plaintiff and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Warren S. Kinsler, Nate J. Kowalski, Anthony P. De Marco, Sharon J. Ormond and Jennifer D. Cantrell for Defendant and Respondent.

Liebert Cassidy Whitmore, Brian P. Walter and David A. Urban for California School Boards Association and its Educational Legal Alliance, the League of California Cities and the California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

## Opinion

**FYBEL, J.—**

### INTRODUCTION

Plaintiff James Sheppard was a part-time instructor employed by defendant North Orange County Regional Occupational Program (NOCROP). NOCROP was created by four public school districts. During his employment, Sheppard was required to spend 20 minutes of unpaid time preparing for every hour he

spent teaching. Sheppard sued NOCROP and sought compensation for his unpaid preparation time by asserting claims for violation of the minimum wage law, pursuant to the Industrial Welfare Commission's (IWC) wage order No. 4-2001 (Wage Order No. 4-2001)[1] and Labor Code section 218, breach of contract, and quantum meruit. (All further statutory references are to the Labor Code unless otherwise specified.)

Following a series of challenges to Sheppard's pleadings, judgment was entered in favor of NOCROP. Sheppard contends the trial court erred by (1) ordering judgment on the pleadings as to the violation of the minimum wage law claim contained in the first amended complaint; (2) sustaining, without leave to amend, NOCROP's demurrer to Sheppard's breach of contract claim as contained in the original complaint; and (3) sustaining, without leave to amend, NOCROP's demurrer to his quantum meruit claim as contained in the third amended complaint.

We reverse in part and affirm in part. We reverse the trial court's order granting judgment on the pleadings as to the violation of the minimum wage law claim. Sheppard alleged he was employed by a regional occupational program which was the creation of one or more public school districts through Education Code section 52301. We conclude the minimum wage provision in Wage Order No. 4-2001 applies to Sheppard's employment with NOCROP. We hold the Legislature has plenary authority over public school districts and was constitutionally authorized to vest in the IWC, through section 1173, the power to impose the minimum wage law provision contained in Wage Order No. 4-2001 as to employees of such public school districts. (For the reasons we explain, this holding is limited to employees of public school districts.) We therefore reverse the trial court's order granting judgment on the pleadings as to the violation of the minimum wage law claim.

We also reverse the order sustaining NOCROP's demurrer to Sheppard's breach of contract claim. California Supreme Court precedent establishes that a public employee has a contractual right to earned but unpaid compensation, which is protected by the state Constitution.

We affirm the order sustaining the demurrer to the quantum meruit claim because the Government Claims Act (Gov. Code, § 810 et seq.) bars the assertion of such a claim against a public entity.

---

[1] Wage Order No. 4-2001 is set forth in title 8, section 11040 of the California Code of Regulations.

## BACKGROUND

In November 2004, Sheppard filed a complaint against NOCROP for failure to pay wages in violation of Wage Order No. 4-2001, failure to pay wages in breach of a written contract, and unfair competition. The complaint alleged that "[b]etween approximately January 1, 2000 and the present," Sheppard was employed "as a full-time and/or part-time instructor" by NOCROP which "was and is a governmental entity doing business in Orange County, California." The complaint further alleged that before Sheppard began his employment with NOCROP and each school year after that, he was required to sign a document entitled "North Orange County Regional Occupational Program Notice of Offer [o]f Employment-Certificated Employee" (notice of offer), which stated in part: "[F]ull-time work and salary schedules are based upon an 8 hour day/40 hour week. A full-time classroom/lab schedule is 30 hours per week with 10 hours per week of preparation time. Part-time assignments require 20 minutes of <u>unpaid</u> preparation time for each hour of classroom/lab instruction." (Boldface omitted.) The complaint stated that "as a part-time instructor, [Sheppard] has not [been] and is not paid for 20 minutes of required preparation time" and that "he is seeking all unpaid wages owed between approximately January 2000 and the present based upon the fact that he has not been paid for 20 minutes of required preparation time for each hour of classroom/lab instruction."

The complaint further alleged that on September 27, 2004, Sheppard submitted a claim for damages to NOCROP, pursuant to Government Code section 910, and NOCROP rejected his claim on October 26, 2004. All three claims of the complaint were based on the applicability of the minimum wage requirement contained in Wage Order No. 4-2001 to the unpaid preparation work Sheppard performed for NOCROP under the notice of offer.

The trial court sustained NOCROP's demurrer, without leave to amend, as to Sheppard's breach of contract and unfair competition claims "for lack of opposition,"[2] but overruled the demurrer as to the violation of the Wage Order No. 4-2001 claim.

Sheppard filed a first amended complaint which contained a single cause of action for violation of Wage Order No. 4-2001. The first amended complaint alleged that although Wage Order No. 4-2001 requires that all employees be paid at least $6.75 per hour for all hours worked, NOCROP required its part-time instructors, including Sheppard, who were paid between $31.35 and

---

[2] Sheppard's opposition to the demurrer did not contain argument specifically challenging NOCROP's demurrer to the breach of contract claim. Because NOCROP has not argued Sheppard forfeited the right to challenge the trial court's ruling on appeal, we address the merit of Sheppard's arguments on this issue. Sheppard does not raise any issue pertaining to his unfair competition claim in this appeal.

$36.15 per hour, to spend 20 minutes of unpaid time to prepare for every hour of classroom or laboratory instruction they performed. The first amended complaint also contained class action allegations.

NOCROP filed a motion for summary judgment to the first amended complaint. The trial court treated the motion for summary judgment as a motion for judgment on the pleadings, which it granted. The court also granted Sheppard "leave to amend the complaint to state a cause of action for an alleged violation of Education Code section 45025."[3] The trial court denied Sheppard's motion requesting the court's reconsideration of the order granting judgment on the pleadings.

Sheppard filed a second amended complaint which contained a claim for violation of Education Code section 45025, based on the allegation he was not paid for all hours he worked on a part-time basis. The trial court overruled NOCROP's demurrer to the second amended complaint.

Sheppard filed a third amended complaint in which he added a claim for quantum meruit, seeking recovery of the "reasonable value" of unpaid preparation time. The trial court sustained NOCROP's demurrer to the quantum meruit claim, without leave to amend, on the ground such a claim may not be maintained against a public entity.

Pursuant to Sheppard's request to voluntarily dismiss his claim for violation of Education Code section 45025 and the trial court's order granting his request, the court clerk entered dismissal of the action with prejudice. Sheppard appealed.

## DISCUSSION

### I.

#### STANDARD OF REVIEW

This appeal involves issues arising from an order granting judgment on the pleadings and orders sustaining demurrers. A judgment on the pleadings and a

---

[3] Education Code section 45025 provides: "Any person employed by a district in a position requiring certification qualifications who serves less than the minimum schoolday as defined in Sections 46112 to 46116, inclusive, or 46141 may specifically contract to serve as a part-time employee. In fixing the compensation of part-time employees, governing boards shall provide an amount which bears the same ratio to the amount provided full-time employees as the time actually served by such part-time employees bears to the time actually served by full-time employees of the same grade or assignment. This section shall not apply to any person classified as a temporary employee under Sections 44919 and 44888, or any person employed as a part-time employee above and beyond his employment as a full-time employee in the same school district."

judgment following the sustaining of a demurrer are reviewed under the same de novo standard. (*McCutchen v. City of Montclair* (1999) 73 Cal.App.4th 1138, 1144 [87 Cal.Rptr.2d 95]; *Boccato v. City of Hermosa Beach* (1994) 29 Cal.App.4th 1797, 1803–1804 [35 Cal.Rptr.2d 282].) Accordingly, we treat the properly pleaded allegations of a challenged complaint as true, and liberally construe them to achieve " ' "substantial justice" ' " among the parties. (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118 [51 Cal.Rptr.2d 251, 912 P.2d 1198].)

We consider only the allegations of a challenged complaint and matters subject to judicial notice to determine whether the facts alleged state a cause of action under any theory. (*American Airlines, Inc. v. County of San Mateo, supra*, 12 Cal.4th at p. 1118.) " 'Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].)

## II.

### THE TRIAL COURT ERRED BY GRANTING JUDGMENT ON THE PLEADINGS AS TO SHEPPARD'S CLAIM FOR VIOLATION OF THE MINIMUM WAGE LAW.[4]

In support of Sheppard's claim that NOCROP violated the minimum wage law, the first amended complaint alleged that although Wage Order No. 4-2001 requires all employees be paid minimum wage for all hours worked, NOCROP required its part-time instructors, including Sheppard, to spend 20 minutes of unpaid time to prepare for every hour of classroom or laboratory instruction they performed. NOCROP filed a motion for summary judgment on the ground that Sheppard is a public employee and thus Wage Order No. 4-2001 does not and cannot apply to him.[5]

---

[4] We invited the Attorney General to file an amicus curiae brief addressing certain issues pertaining to the applicability of the minimum wage provision of Wage Order No. 4-2001 to Sheppard. The Attorney General declined our invitation.

[5] Although this issue was not argued in the appellate briefs, at oral argument, the parties addressed whether the first amended complaint failed to allege a violation of the minimum wage law because its allegations showed Sheppard's average compensation, factoring in his unpaid preparation time, well exceeded the minimum wage requirement. Compliance with the minimum wage law is determined by analyzing the compensation paid for each hour worked; averaging hourly compensation is not permitted under California law. In *Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 324 [37 Cal.Rptr.3d 460], the appellate court explained: "While the averaging method utilized by the federal courts to assess whether a minimum wage violation [under the federal Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.)] has

The trial court's order granting judgment on the pleadings in favor of NOCROP stated in pertinent part: "Defendant has met its burden of showing the action, which is based solely on alleged violation of a wage order promulgated by the Industrial Welfare Commission, has no merit and that Defendant has a complete defense. . . . [¶] . . . It is undisputed the Defendant was created by a Joint Powers agreement between four school districts. As a public school entity, the State Legislature has plenary power over wage and hour disputes between the school districts and certificated teachers. (*Wilson v. State Bd. Of Education* (1999) 75 Cal.App.4th 1125, 1134–1135 [89 Cal.Rptr.2d 745].) Public agencies are not bound by general words of a statute absent express language or necessary implication. (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164; *Campbell v. Regents of the University of California* (2005) 35 Cal.4th 311; *see also Kistler v. Redwoods Community College Dist.* (1993) 15 Cal.App.4th 1326, 1331–1332.) Neither the wage order relied upon by the Plaintiff nor the implementing Labor Code sections expressly, or by necessary implication, obligate Defendant to pay Plaintiff hourly wages for 'preparation time' beyond the hourly wages mandated by Education Code section 45025. Thus, the wage order is not applicable to Defendant."

Although the trial court stated it found that NOCROP met its burden in moving for summary judgment and that Sheppard failed to carry his burden of demonstrating the existence of a triable issue of material fact, the court did not grant summary judgment in favor of NOCROP. Instead, the court stated it "will treat the matter as a motion for judgment on the pleadings and grant [Sheppard] leave to amend the complaint to state a cause of action for an alleged violation of Education Code section 45025." The court added it assumed all the facts pleaded were true for purposes of the motion only and explained it concluded the first amended complaint failed to allege facts sufficient to state a cause of action.

As explained in detail *post*, we conclude the trial court erred by ruling that Sheppard failed to allege facts sufficient to state a claim for violation of the minimum wage law. For the reasons we will explain, we conclude (1) by its

occurred may be appropriate when considered in light of federal public policy, it does not advance the policies underlying California's minimum wage law and regulations. California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked. We conclude, therefore, that the [Fair Labor Standards Act of 1938] model of averaging all hours worked 'in any work week' to compute an employer's minimum wage obligation under California law is inappropriate. The minimum wage standard applies to each hour worked by [an employee] for which [he or she was] not paid. The trial court, therefore, correctly determined that [the employer] violated section 1194 by failing or refusing to pay for driving time and time spent by foremen processing paperwork." We also do not address whether Sheppard would have been able to state a claim for violation of the minimum wage law if the notice of offer had been silent as to payment for preparation time.

terms, the minimum wage provision contained in Wage Order No. 4-2001 applies to Sheppard's employment with NOCROP; (2) the Legislature authorized the IWC to so extend the application of the minimum wage law to apply to certain public employees; and (3) the Legislature has plenary authority over public school districts in California and was not otherwise barred by the state Constitution from requiring school districts to comply with the minimum wage provision of Wage Order No. 4-2001. We begin our analysis by reviewing applicable rules of statutory interpretation.

## A.

### *Applicable Rules of Statutory Interpretation.*

Our analysis of the trial court's order granting judgment on the pleadings as to the violation of the minimum wage law claim primarily depends on our interpretation of Wage Order No. 4-2001 and section 1173. We therefore begin our discussion by reviewing the applicable rules of statutory interpretation.

■ In *Martinez v. Combs* (2010) 49 Cal.4th 35, 51 [109 Cal.Rptr.3d 514, 231 P.3d 259] (*Martinez*), the California Supreme Court stated: " '[O]ur fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citation.] In this search for what the Legislature meant, '[t]he statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.' "

■ In *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1192 [48 Cal.Rptr.3d 108, 141 P.3d 225], the Supreme Court explained: "A traditional rule of statutory construction is that, absent express words to the contrary, governmental agencies are not included within the general words of a statute." (See *Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 330 [25 Cal.Rptr.3d 320, 106 P.3d 976] [" 'Generally, however, provisions of the Labor Code apply only to employees in the private sector unless they are specifically made applicable to public employees.' "].) The Supreme Court pointed out an exception to this principle that "government agencies are excluded from the operation of general statutory provisions 'only if their inclusion would result in an infringement upon

sovereign governmental powers. . . . Pursuant to this principle, governmental agencies have been held subject to legislation which, by its terms, applies simply to any "person." ' " (*Wells*, at p. 1192.) The Supreme Court explained, "the premise that public entities are statutory 'persons' unless their sovereign powers would be infringed is simply a maxim of statutory construction. While the 'sovereign powers' principle can help resolve an unclear legislative intent, it cannot override positive indicia of a contrary legislative intent." (*Id.* at p. 1193.)

▪ In addition, " '[s]tatutes governing conditions of employment are construed broadly in favor of protecting employees.' [Citations.] We construe wage orders, as quasi-legislative regulations, in accordance with the standard rules of statutory interpretation." (*Bearden v. U.S. Borax, Inc.* (2006) 138 Cal.App.4th 429, 435 [41 Cal.Rptr.3d 482].)

B.

*Wage Order No. 4-2001 Provides Its Minimum Wage Provision Applies to "All Persons" Directly Employed by the State or Any of Its Political Subdivisions Which the First Amended Complaint Sufficiently Alleged Included Sheppard.*

▪ Wage Order No. 4-2001 generally applies to "all persons employed in professional, technical, clerical, mechanical, and similar occupations whether paid on a time, piece rate, commission, or other basis."[6] (Cal. Code Regs., tit. 8, § 11040, subd. 1.) In section 11040, subdivision 1(B) of the California Code of Regulations, entitled "Applicability of Order," Wage Order No. 4-2001 states: "Except as provided in Sections 1 [('Applicability of Order')], 2 [('Definitions')], 4 [('Minimum Wages')], 10 [('Meals and Lodging')], and 20 [('Penalties')], the provisions of this order shall not apply to any employees directly employed by the State or any political subdivision thereof, including any city, county, or special district."[7] Applying the applicable rules of statutory construction discussed *ante*, we interpret the language of Wage Order No. 4-2001, by its terms, to impose the minimum wage provision as to

---

[6] Both parties agree that if any of the IWC wage orders apply to Sheppard's position as an instructor, the applicable wage order is Wage Order No. 4-2001.

[7] Wage Order No. 4-2001's predecessor, IWC wage order No. 4-2000, broadly exempted certain public employees, stating: "The provisions of this Order shall not apply to employees directly employed by the State or any county, incorporated city or town or other municipal corporation, or to outside salespersons." (Cal. Code Regs., tit. 8, § 11040, former subd. 1(B).) Unlike wage order No. 4-2000, Wage Order No. 4-2001 narrows the exemption for employees directly employed by the state or its political subdivisions to the provisions set forth at subdivisions 3 (hours and days of work), 5 (reporting time pay), 6 (licenses for disabled workers), 7 (records), 8 (cash shortage and breakage), 9 (uniforms and equipment), 11 (meal

all employees in the occupations described therein, including employees directly employed by the state or any political subdivision of the state. We do so because Wage Order No. 4-2001 refers to "Section[] . . . 4 [(minimum wages)]" as an express exception to its general statement that Wage Order No. 4-2001 does not apply to state employees or employees of political subdivisions of the state. (Cal. Code Regs., tit. 8, § 11040, subd. 1(B).)

(5) We further conclude the first amended complaint alleged Sheppard was directly employed by a political subdivision of the state. NOCROP is a regional occupational program established by one or more public school districts under Education Code section 52301.[8] A public school district is a political subdivision of the State of California. (See *Hi-Voltage Wire Works, Inc. v. City of San Jose* (2000) 24 Cal.4th 537, 570 [101 Cal.Rptr.2d 653, 12 P.3d 1068] (conc. opn. of Mosk, J.) [art. I, § 31, subd. (f) of the Cal. Const. "defines the 'State' to 'include, but not necessarily be limited to, the State itself, any city, county, city and county, public university system, including the University of California, community college district, school district, special district, or *any other political subdivision* or governmental instrumentality of or within the State' " (italics added)].) We are satisfied Sheppard has pleaded sufficient facts to show his employment as an instructor by a regional occupational program constituted direct employment by a political subdivision of the state.

Thus, the first amended complaint sufficiently alleged facts showing that, based on the terms of Wage Order No. 4-2001, NOCROP was required to comply with the minimum wage provision contained therein.

C.

*The IWC Was Authorized to Apply the Minimum Wage
Requirement to Certain Public Employees.*

NOCROP argues that even if Wage Order No. 4-2001, by its terms, appears to impose the minimum wage requirement as to Sheppard, the IWC exceeded its authority in doing so. For the reasons we discuss *post*, we disagree. We

periods), 12 (rest periods), 13 (change rooms and resting facilities), 14 (seats), 15 (temperature), 16 (elevators), 17 (exemptions), 18 (filing reports), 19 (inspection), 21 (separability), and 22 (posting of order), which do not apply to employees directly employed by the state or any of its political subdivisions.

[8] Education Code section 52301, subdivision (a)(1) provides in part: "The county superintendent of schools of each county, with the consent of the state board, may establish and maintain, or with one or more counties may establish and maintain, a regional occupational center, or regional occupational program, in the county to provide education and training in career technical courses."

reach our conclusion by reviewing the history of the IWC; its enabling statute, section 1173; the Legislature's plenary authority over public school districts; and other pertinent legal authorities.

1.

### The History of the IWC and the Minimum Wage Laws Show the Legislature Has Conferred Broad Authority on the IWC.

In *Martinez, supra,* 49 Cal.4th 35, 53, the Supreme Court provided a comprehensive overview of the history of the IWC and minimum wage legislation in California. The Supreme Court stated: "In California specifically, calls to enact a minimum wage followed 1911 legislation prohibiting some child labor and regulating the hours women and children could be required to work [citations], and a comprehensive 1912 report by the State Bureau of Labor Statistics on wages, hours and labor conditions throughout the state. The report showed, among other things, that approximately 40 percent of working women earned less than $9 per week. [Citation.] 'Although interpretations of this evidence varied widely, most experts thought that these wages were unreasonably low. The bureau itself considered them below a decent standard of living—"many women were living below any normal standard, and . . . such subnormal living was having a most disastrous effect on the health and morals of the women workers." ' " (*Ibid.*)

"The 1913 Legislature addressed these continuing problems by creating the IWC and delegating to it broad authority to regulate the hours, wages and labor conditions of women and minors [citation], and by proposing to the voters a successful constitutional amendment confirming the Legislature's authority to proceed in that manner."[9] (*Martinez, supra,* 49 Cal.4th at p. 54.) Voters in the November 1914 general election approved of former article XX, section 17 1/2 of the California Constitution, which provided: " 'The legislature may, by appropriate legislation, provide for the establishment of a minimum wage for women and minors and may provide for the comfort, health, safety and general welfare of any and all employees. No provision of this constitution shall be construed as a limitation upon the authority of the legislature to confer upon any commission now or hereafter created, such power and authority as the legislature may deem requisite to carry out the

---

[9] Section 13 of the "uncodified 1913 act" (Stats. 1913, ch. 324, § 13, p. 637), which created the IWC and delegated to it the power to set minimum wages for workers in California, stated: " 'Any employee receiving less than the legal minimum wage applicable to such employee shall be entitled to recover in a civil action the unpaid balance of the full amount of such minimum wage, together with costs of suit, notwithstanding any agreement to work for such lesser wage.' " (*Martinez, supra,* 49 Cal.4th at p. 52 & fn. 18.)

provisions of this section.' " (*Martinez, supra*, at p. 54, fn. 20.) The current version of the California Constitution "declares on the same point" at article XIV, section 1, as approved by the voters on June 8, 1976. (*Martinez, supra*, at p. 54, fn. 20.) Article XIV, section 1 states: "The Legislature may provide for minimum wages and for the general welfare of employees and for those purposes may confer on a commission legislative, executive, and judicial powers." (Cal. Const., art. XIV, § 1.)

In *Martinez, supra*, 49 Cal.4th at page 54, the Supreme Court further explained: "The IWC's initial statutory duty under the 1913 act was to 'ascertain the wages paid, the hours and conditions of labor and employment in the various occupations, trades, and industries in which women and minors are employed in the State of California, and to make investigations into the comfort, health, safety and welfare of such women and minors.' [Citation.] To assist the IWC in this work, the Legislature gave the commission broad investigatory powers, including free access to places of business and employment [citation], as well as the authority to demand reports and information under oath [citation], to inspect records [citation], and to issue subpoenas requiring the appearance and sworn testimony of witnesses [citation]."

█ "Today, the laws defining the IWC's powers and duties remain essentially the same as in 1913, with a few important exceptions: First, the voters have amended the state Constitution to confirm the Legislature's authority to confer on the IWC *'legislative, executive, and judicial powers.'* [Citations.] Second, the Legislature has expanded the IWC's jurisdiction to include all employees, male and female, in response to federal legislation barring employment discrimination because of sex [citation]. [Citations.] Third, 'while retaining the authorizing language of [the 1913 act],' *the Legislature has 'restated the commission's responsibility in even broader terms'* [citation], *charging the IWC with the 'continuing duty' to ascertain the wages, hours and labor conditions of 'all employees in this state,' to 'investigate [their] health, safety, and welfare,' to 'conduct a full review of the adequacy of the minimum wage at least once every two years' (Lab. Code, § 1173),* and to convene wage boards and adopt new wage orders if the commission finds 'that wages paid to employees may be inadequate to supply the cost of proper living' [citations]. Finally, while the amount of the minimum wage has in recent years been set by statute [citations], specific employers and employees still become subject to the minimum wage only through, and under the terms of, the IWC's applicable wage orders [citation]." (*Martinez, supra*, 49 Cal.4th at p. 55, fn. omitted, second italics added.) "Virtually the same statutory and regulatory structure remains in place today. . . . Accordingly, today, as under the 1913 act, specific employers and employees become subject to the minimum wage only under the terms of

an applicable wage order, and an employee who sues to recover unpaid minimum wages actually and necessarily sues to enforce the wage order." (*Id.* at pp. 56–57.)[10]

■ "Although the IWC was defunded effective July 1, 2004, its wage orders remain in effect. [Citation.] [¶¶] Effective January 1, 1998, the IWC eliminated daily overtime from five of the then existing 15 wage orders. [Citation.] . . . In response, the Legislature passed, and the Governor signed, Assembly Bill No. 60 (1999–2000 Reg. Sess.), the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999. [Citation.] Among other things, this legislation restored the eight-hour workday in section 510 and mandated meal periods in section 512." (*Johnson v. Arvin-Edison Water Storage Dist.* (2009) 174 Cal.App.4th 729, 735 [95 Cal.Rptr.3d 53], fn. omitted (*Johnson*).) Wage Order No. 4-2001, as thereafter amended effective January 1, 2001, imposes certain provisions, including a minimum wage obligation, as to employees directly employed by the state or any of its political subdivisions. (Cal. Code Regs., tit. 8, § 11040, subds. 1(B), 4.)

■ The Supreme Court in *Martinez, supra,* 49 Cal.4th at page 60, stated: "The Legislature and the voters have repeatedly demanded the courts' deference to the IWC's authority and orders." The *Martinez* court further stated: "Obeying these formal expressions of legislative and voter intent, the courts have shown the IWC's wage orders extraordinary deference, both in upholding their validity and in enforcing their specific terms. . . . 'Moreover, past decisions . . . teach that in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection.' " (*Id.* at p. 61.)

2.

### Section 1173 Enables the IWC to Regulate Wages of "All Employees" in the State.

■ The current IWC legislative enabling authority is codified at section 1173, which provides the IWC a "broad statutory mandate" to regulate the working conditions of employees in California, including setting standards for minimum wages and maximum hours. (*Industrial Welfare Com. v. Superior*

---

[10] "Today 18 wage orders are in effect, 16 covering specific industries and occupations, one covering all employees not covered by an industry or occupation order, and a general minimum wage order amending all others to conform to the amount of the minimum wage currently set by statute." (*Martinez, supra,* 49 Cal.4th at p. 57, fns. omitted.)

*Court* (1980) 27 Cal.3d 690, 701–702 [166 Cal.Rptr. 331, 613 P.2d 579].) Section 1173 provides: "It is the continuing duty of the Industrial Welfare Commission, hereinafter referred to in this chapter as the commission, to ascertain the wages paid to *all employees* in this state, to ascertain the hours and conditions of labor and employment in the various occupations, trades, and industries in which employees are employed in this state, and to investigate the health, safety, and welfare of those employees. [¶] The commission shall conduct a full review of the adequacy of the minimum wage at least once every two years. The commission may, upon its own motion or upon petition, amend or rescind any order or portion of any order or adopt an order covering any occupation, trade, or industry not covered by an existing order pursuant to this chapter. [¶] Before adopting any new rules, regulations, or policies, the commission shall consult with the Occupational Safety and Health Standards Board to determine those areas and subject matters where the respective jurisdictions of the commission and the Occupational Safety and Health Standards Board overlap. This consultation need not take the form of a joint meeting. In the case of such overlapping jurisdiction, the Occupational Safety and Health Standards Board shall have exclusive jurisdiction, and rules, regulations, or policies of the commission on the same subject have no force or effect." (Italics added.) Section 1173 is contained in chapter 1 of part 4, division 2 of the Labor Code. Section 1171 (part of the same chapter) provides in part: "The provisions of this chapter shall apply to and include men, women and minors employed in any occupation, trade, or industry, whether compensation is measured by time, piece, or otherwise, but shall not include any individual employed as an outside salesman or any individual participating in a national service program carried out using assistance provided under Section 12571 of Title 42 of the United States Code."

NOCROP argues that section 1173 does not confer on the IWC authority to regulate any public employees. Citing *Wells v. One2One Learning Foundation, supra,* 39 Cal.4th at page 1190, and *Johnson, supra,* 174 Cal.App.4th at page 736, NOCROP argues section 1173 fails to expressly state the IWC has authority over the public sector and thus it must be presumed no such authority has been provided to it. But section 1173 broadly refers to "all employees in this state," which necessarily includes employees working in the public sector. The history of the IWC, *ante,* establishes the Legislature's consistent intent to provide the IWC ever-broadening authority.

Furthermore, no party has cited any legal authority establishing that the IWC lacks authority to impose the minimum wage law on any portion of the

public sector. That the IWC has not exercised its authority until Wage Order No. 4-2001 does not establish it lacked authority to do so.[11]

On the other hand, several appellate decisions assume the IWC's authority to regulate the public sector in determining whether a particular wage order applied. For example, in *Johnson, supra,* 174 Cal.App.4th at pages 739–740, the appellate court assumed the existence of IWC authority to regulate the public sector in its discussion whether IWC wage order No. 17, on its terms, applied to a public water storage district. In *Kettenring v. Los Angeles Unified School Dist.* (2008) 167 Cal.App.4th 507, 514 [84 Cal.Rptr.3d 196], the appellate court concluded certain teachers in a public school district qualified for the application of the professional exemption set forth in Wage Order No. 4-2001. In *California Correctional Peace Officers' Assn. v. State of California* (2010) 188 Cal.App.4th 646, 655 [115 Cal.Rptr.3d 361], the appellate court concluded wage order No. 17 did not apply to peace officers because, by its terms, that wage order does not apply to any employee who was specifically exempted in the wage orders in effect in 1997 and the employees at issue had been specifically exempted in the relevant 1997 wage orders.

Our interpretation of section 1173 is also consistent with legislation passed in 2003, which reveals an assumption by the Legislature itself that the IWC has authority to regulate the public sector. Section 512.5 provides: "(a) Notwithstanding any provision of this chapter, if the Industrial Welfare Commission adopts or amends an order that applies to an *employee of a public agency* who operates a commercial motor vehicle, it may exempt that employee from the application of the provisions of that order which relate to meal periods or rest periods, consistent with the health and welfare of that employee, if he or she is covered by a valid collective bargaining agreement. [¶] (b) 'Commercial motor vehicle' for the purposes of this section has the same meaning as provided in subdivision (b) of Section 15210 of the Vehicle

---

[11] NOCROP argues *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1084 [32 Cal.Rptr.3d 483, 116 P.3d 1162], is inconsistent with our conclusion because in that case, the Supreme Court stated, "[t]he IWC has promulgated 18 orders that remain in force today, 16 relating to specific industries and occupations, one general minimum wage order that applies to all California employers and employees (*excluding public employees* and outside salespersons), and one order implementing the Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999 [citation]." (Italics added.) *Reynolds v. Bement* involved an overtime claim asserted by an employee of a private entity and did not cite section 1173 much less analyze the scope of the IWC's authority under section 1173. Based on the legal authorities discussed *ante,* including Supreme Court authority, we conclude the IWC was enabled through section 1173 to apply the minimum wage provision of Wage Order No. 4-2001 on school districts. (See *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195 [81 Cal.Rptr.2d 521, 969 P.2d 613] ["It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court. An opinion is not authority for propositions not considered."].)

Code. [¶] (c) *'Public agency' for the purposes of this section means the state and any political subdivision of the state,* including any city, county, city and county, or special district." (Italics added.)

The Legislative Counsel's Digest of Assembly Bill No. 98 (2003–2004 Reg. Sess.), enacted as chapter 327 on September 8, 2003, page 1, through which section 512.5 was enacted, further explained: "Existing law authorizes the Industrial Welfare Commission to adopt or amend working condition orders with respect to break periods, meal periods, and days of rest for any workers in this state consistent with the health and welfare of those workers. Existing law prohibits an employer, with certain exceptions, from employing an employee for more than 5 hours per day without a meal period of not less than 30 minutes, or for more than 10 hours per day without a 2nd meal period of not less than 30 minutes. [¶] This bill would provide that if the Industrial Welfare Commission adopts or amends an order that applies to an employee of a public agency who operates a commercial motor vehicle, it may exempt an employee covered by a valid collective bargaining agreement from provisions that relate to meal periods or rest periods."

3.

### NOCROP's Additional Arguments Challenging the IWC's Authority as to the Public Sector Fail.

In its appellate brief, NOCROP asserts additional arguments challenging the conclusion that the IWC had the authority to impose the minimum wage requirement on NOCROP. First, NOCROP argues section 1173 should not be construed to include authority as to any part of the public sector because "the Legislature specifically referenced public agencies in other parts of the Labor Code when it intended for those provisions to apply to them." Our review of the Labor Code revealed that it is not a model of uniformity in its references to public employees. Some sections expressly include public entities. (See, e.g., §§ 432.7, subd. (a) ["No employer, whether a public agency or private individual or corporation"], 2808, subd. (a) ["It is the responsibility of all employers, whether public or private, to provide to all eligible employees an outline of coverage . . . ."], 2809, subd. (a) ["Any employer, whether private or public"].) Other sections expressly exclude public employees. (See, e.g., §§ 220, subd. (a) ["Sections 201.3, 201.5, 201.7, 203.1, 203.5, 204, 204a, 204b, 204c, 204.1, 205, and 205.5 do not apply to the payment of wages of employees directly employed by the State of California."], 432.2, subd. (a) ["The prohibition of this section does not apply to the federal government . . . or the state government or any agency or local subdivision thereof . . . ."].) While the statutory language of section 1173 could be more express, we consider it sufficiently clear to reflect the Legislature's intent to provide the

IWC authority to regulate certain public employees. We respectfully invite the Legislature to clarify its intent in this regard.

■ Second, NOCROP argues we should interpret section 1173 as excluding all public employees because "[t]he Legislature incorporated provisions of the Labor Code into the Education Code when it intended to apply the Labor Code to school districts." That the Education Code incorporates portions of the Labor Code does not undermine the IWC's authority. NOCROP has not cited any provision in the Education Code providing that the Education Code is the exclusive source of regulation regarding wages and conditions of employment for public school teachers. Furthermore, NOCROP has failed to show how imposing the minimum wage law as to its part-time instructors would be inconsistent with or otherwise create a conflict with any existing provision of the Education Code, whether dealing with compensation or otherwise.

Finally, NOCROP argues section 218, which the first amended complaint cited as Sheppard's authority for bringing a private right of action to enforce the minimum wage law against NOCROP, is inapplicable under section 220, subdivision (b) because NOCROP is a municipal corporation to which section 218 is inapplicable and thus expressly excluded. We do not need to decide section 218's applicability here because section 1194, subdivision (a) expressly provides in part: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance . . . ."

D.

*The Legislature Has Plenary Authority over Public School Districts.*

■ NOCROP argues that even assuming the IWC was legislatively authorized to impose the minimum wage law as to certain public employees, any such application of the wage orders to public employees would "unlawfully infringe on the plenary powers of cities, counties, school districts, and other local entities to determine the compensation of their own employees." The California Supreme Court has repeatedly held, however, that the Legislature has plenary authority over public school districts, not vice versa.

In *Butt v. State of California* (1992) 4 Cal.4th 668, 680–681 [15 Cal.Rptr.2d 480, 842 P.2d 1240], the California Supreme Court stated: "California courts have adhered to the following principles: Public education is an obligation which the State assumed by the adoption of the Constitution. [Citations.] The

system of public schools, although administered through local districts created by the Legislature, is '*one* system . . . applicable to all the common schools . . . .' [Citation.] '. . . In view of the importance of education to society and to the individual child, the opportunity to receive the schooling furnished by the state must be made available to all on an equal basis. . . .' [Citation.] '[M]anagement and control of the public schools [is] a matter of state[, not local,] care and supervision. . . .' [Citations.] *The Legislature's 'plenary' power over public education is subject only to constitutional restrictions.* [Citations.] Local districts are the State's agents for local operation of the common school system [citations], and the State's ultimate responsibility for public education cannot be delegated to any other entity [citations]. [¶] It is true that the Legislature has assigned much of the governance of the public schools to the local districts [citations], which operate under officials who are locally elected and appointed [citations]. . . . [¶] Yet the existence of this local-district system has not prevented recognition that the State itself has broad responsibility to ensure basic educational equality under the California Constitution." (Second italics added.)

Significantly, article IX, section 14 of the California Constitution provides: "The Legislature shall have power, by general law, to provide for the incorporation and organization of school districts, high school districts, and community college districts, of every kind and class, and may classify such districts. [¶] The Legislature may authorize the governing boards of all school districts to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established."

In *California Teachers Assn. v. Hayes* (1992) 5 Cal.App.4th 1513, 1524–1525 [7 Cal.Rptr.2d 699], the court stated: "[A] school district is not a distinct and independent body politic and is not free and independent of legislative control. [Citation.] [¶] The Legislature's power over the public school system has been variously described as exclusive, plenary, absolute, entire, and comprehensive, subject only to constitutional constraints. [Citations.] Indeed, it is said that the Legislature cannot delegate ultimate responsibility over education to other public or private entities. [Citations.] Consequently, regulation of the education system by the Legislature will be held to be controlling over any inconsistent local attempts at regulation or administration of the schools. [Citations.] And no one may obtain rights vested against state control by virtue of local provisions, ordinances or regulations. [Citation.] [¶] . . . 'School moneys belong to the state, and the apportionment of funds to a school district does not give that district a proprietary right therein.' [Citations.]"

In *Wells v. One2One Learning Foundation, supra,* 39 Cal.4th at page 1195, citing *Butt v. State of California,* the California Supreme Court reiterated,

"[t]he Legislature has chosen to implement this 'fundamental' guarantee through local school districts with a considerable degree of local autonomy, but it is well settled that the state retains plenary power over public education. [Citation.] [¶] Hence, there can be no doubt that public education is among the state's most basic sovereign powers."

Article IX, section 6 of the California Constitution places a limitation on the Legislature's authority over public school districts as it prohibits a full-time teacher employed by a school district from being paid an annual salary less than $2,400 per year.[12] We have found no constitutional authority limiting the Legislature's ability to authorize the IWC to apply the minimum wage law provision contained in Wage Order No. 4-2001 to public school districts such as those which formed NOCROP.[13]

NOCROP argues the application of the minimum wage law provision contained in Wage Order No. 4-2001 is nevertheless unconstitutional as it would "violate[] the home rule doctrine because it infringes on the powers of local cities, counties, and special districts to determine the compensation of their own workers." NOCROP cites several cases in support of its argument, including *County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 282, 285 [132 Cal.Rptr.2d 713, 66 P.3d 718] (as art. XI, § 1, subd. (b) of the Cal. Const. provides that "the *county*, not the state, not someone else, shall provide for the compensation of its employees," legislation requiring counties and local agencies to submit to binding arbitration of financial issues arising during negotiation with unions representing firefighters or law enforcement officers is unconstitutional);[14] *Dimon v. County of Los Angeles* (2008) 166 Cal.App.4th 1276, 1279, 1281 [83 Cal.Rptr.3d 576] (charter county has exclusive authority to provide for compensation of deputy probation officers, as "the determination of wages to be paid to employees of charter counties 'is a matter of local rather than statewide concern' "); and *Curcini v. County of*

---

[12] Article IX, section 6 of the *California Constitution* provides in part: "Each person, other than a substitute employee, employed by a school district as a teacher or in any other position requiring certification qualifications shall be paid a salary which shall be at the rate of an annual salary of not less than twenty-four hundred dollars ($2,400) for a person serving full time, as defined by law."

[13] We note that the Legislature would be further limited by article IX, section 9 of the California Constitution addressing the University of California. In addition, Education Code section 66606.2, subdivision (b) states that the Legislature intends, "[t]he California State University not be governed by any statute enacted after January 1, 1997, that does not amend a previously applicable act and that applies generally to the state or to state agencies, departments, or boards, unless the statute expressly provides that the California State University is to be governed by that statute."

[14] Article XI, section 1, subdivision (b) of the California Constitution provides: "The Legislature shall provide for county powers, an elected county sheriff, an elected district attorney, an elected assessor, and an elected governing body in each county. . . . The governing body shall provide for the number, compensation, tenure, and appointment of employees."

*Alameda* (2008) 164 Cal.App.4th 629, 643 [79 Cal.Rptr.3d 383] (Lab. Code sections relating to overtime pay "address matters of 'compensation' within the county's exclusive constitutional purview pursuant to article XI, sections 1, subdivision (b), and 4" of the Cal. Const.).

NOCROP's authorities are inapplicable because Sheppard is not employed by a city or county, but, as discussed *ante*, by a regional occupational program formed by multiple public school districts, over which the Legislature has plenary authority.

In light of our conclusion Wage Order No. 4-2001 effectively imposed the minimum wage law on NOCROP, based on the allegations of the first amended complaint, the trial court erred by granting judgment on the pleadings as to Sheppard's claim for NOCROP's violation of the minimum wage law.

### III.

#### THE TRIAL COURT ERRED BY SUSTAINING NOCROP's DEMURRER TO THE BREACH OF CONTRACT CLAIM.

Similar to the violation of the minimum wage law claim, Sheppard's breach of contract claim sought compensation for the 20 minutes of "unpaid" preparation time NOCROP required for each hour Sheppard taught. The complaint sought to reform the contract by omitting the express term "unpaid" in connection with the 20 minutes of required preparation time as invalid, and then deeming the contract breached. Hence, Sheppard alleged NOCROP breached its alleged contract with Sheppard by requiring he spend 20 minutes preparing without compensation for every hour of instruction. (The complaint did not state the alleged contract contained a severability provision.)

We do not decide whether the complaint alleged facts sufficient to constitute a breach of contract cause of action within the meaning of Code of Civil Procedure section 430.10, subdivision (e), because that issue is not before us. NOCROP did not demur on this ground but instead on the very narrow ground that the claim "is barred because public employees hold their positions by statute and are prohibited from maintaining a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing." We therefore consider whether all breach of contract claims by public employees against their employers are prohibited as a matter of law.

In *White v. Davis* (2003) 30 Cal.4th 528, 564 [133 Cal.Rptr.2d 648, 68 P.3d 74], the California Supreme Court reiterated the well-established precedent

"that the terms and conditions of public employment, unlike those of private employment, generally are established by statute or other comparable enactment . . . rather than by contract." In *Miller v. State of California* (1977) 18 Cal.3d 808, 813 [135 Cal.Rptr. 386, 557 P.2d 970] (*Miller*), the Supreme Court explained, "insofar as the duration of such employment is concerned, no employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and conditions fixed by law." The *Miller* court held: "In view of these long and well settled principles, we conclude that the power of the Legislature to reduce the tenure of plaintiff's civil service position and thereby to shorten his state service, by changing the mandatory retirement age was not and could not be limited by any contractual obligation." (*Id.* at p. 814; see, e.g., *Hill v. City of Long Beach* (1995) 33 Cal.App.4th 1684, 1690 [40 Cal.Rptr.2d 125] [appellate court applied *Miller* and held "as a matter of law, [the plaintiff] was not entitled to contract remedies against the City for his removal from the position of managing director"].)

■ But in *Miller, supra*, 18 Cal.3d at page 814, the Supreme Court explained that it has "distinguished decisions containing language . . . 'to the general effect that public employment is not held by contract' because of the fact that '[t]hese cases involve the right to remain in an office or employment, or to the continuation of civil service status.' [Citation.] Pension rights, unlike tenure of civil service employment, are deferred compensation earned immediately upon the performance of services for a public employer '[and] cannot be destroyed . . . without impairing a contractual obligation. Thus the courts of this state have refused to hold, in the absence of special provision, that public employment establishes tenure rights, but have uniformly held that pension laws . . . establish contractual rights.' " Citing *Kern v. City of Long Beach* (1947) 29 Cal.2d 848, 853 [179 P.2d 799], the *Miller* court further stated: "Although the tenure of a public employee is not ordinarily based on contract, it is well established that 'public employment gives rise to certain obligations which are protected by the contract clause of the Constitution,[15] including the right to the payment of salary which has been earned.' [Citation.] Accordingly, this court has repeatedly held that '[s]ince a pension right is "an integral portion of contemplated compensation" [citation] it cannot be destroyed, once it has vested, without impairing a contractual obligation.' " (*Miller, supra*, at p. 815.)

In *White v. Davis, supra*, 30 Cal.4th at page 566, the Supreme Court reiterated this precedent, stating: "[P]ast California cases clearly establish that although the conditions of public employment generally are established by statute rather than by the terms of an ordinary contract, once a public

---

[15] California Constitution, article I, section 9.

employee has accepted employment and performed work for a public employer, the employee obtains certain rights arising from the legislative provisions that establish the terms of the employment relationship—rights that are protected by the contract clause of the state Constitution from elimination or repudiation by the state. As noted, a number of cases have stated broadly that among the rights protected by the contract clause is 'the right to the payment of salary which has been earned.' "

Here, the breach of contract claim was solely focused on recovering earned but unpaid wages.[16] Pursuant to Supreme Court authority, discussed *ante*, Sheppard has a contractual right to such wages, which is protected by the contract clause of the state Constitution. Thus, Sheppard's breach of contract claim is not simply defeated by his status as a public employee, as argued by NOCROP in its demurrer, and NOCROP's demurrer should have been overruled on this point. We do not comment on whether Sheppard's claim is otherwise viable or provable.[17]

IV.

### The Trial Court Did Not Err by Sustaining NOCROP's Demurrer to the Quantum Meruit Claim.

The trial court sustained NOCROP's demurrer to Sheppard's quantum meruit claim which alleged (1) Sheppard "provided valuable services to [NOCROP] in the form of time spent preparing for each hour of classroom/lab instruction, but received no compensation for rendering those services"; (2) "these services were required as part of [Sheppard]'s duties as a part-time Instructor"; and (3) he "is entitled to payment from [NOCROP] for the reasonable value of those services."

NOCROP demurred to the quantum meruit claim on the ground that "as a matter of law, common law claims, including quantum meruit, do not lie

---

[16] This case is therefore distinguishable from *Lachtman v. Regents of University of California* (2007) 158 Cal.App.4th 187, 197–198 [70 Cal.Rptr.3d 147], in which the plaintiff was denied advancement in a Ph.D. program and thereby lost his position as a graduate student researcher. The plaintiff argued his due process rights had been violated by the university's failure to advance him in the Ph.D. program and the university breached a contract by failing to pay the salary he would have earned in the future as a graduate student researcher. (*Id.* at pp. 197, 207.) The *Lachtman* court did not have before it the issue presented in this case—whether a public employee may state a breach of contract claim against his or her employer to seek the recovery of earned but unpaid wages.

[17] NOCROP demurred to the breach of contract claim on one additional ground—"[t]he Complaint lacks the requisite specificity with respect to the periods of time Sheppard worked as a part-time public employee." The parties do not raise or address this issue in their appellate briefs. In light of the reversal of the order sustaining the demurrer to the breach of contract claim, whether the allegations supporting the claim are sufficiently specific might be the subject of a future demurrer or motion.

against public entities, including [NOCROP]." (Underscoring omitted.) The trial court sustained NOCROP's demurrer to that claim, stating: " '[G]enerally a private party cannot sue a public entity on an implied-in-law or quasi-contract theory, because such a theory is based on quantum meruit or restitution considerations which are outweighed by the need to protect and limit a public entity's contractual obligations.['] (*Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 830; and *Katsura v. City of San Buenaventura* (2007) 155 Cal.App.4th 104, 109–110 [65 Cal.Rptr.3d 762].) [Sheppard]'s claim against the school district for unpaid wages is limited to the cause of action for breach of an express contract for wages." (Italics added.)

The trial court properly sustained the demurrer to the quantum meruit claim because such a claim cannot be asserted against a public entity. Government Code section 815 states: "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." The legislative committee comment to section 815 states: "This section *abolishes all common law or judicially declared forms of liability for public entities*, except for such liability as may be required by the state or federal constitution . . . ." (Legis. Com. com., 32 West's Ann. Gov. Code (1995 ed.) foll. § 815, p. 167, italics added.) In *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 900 [80 Cal.Rptr.3d 690, 188 P.3d 629], the Supreme Court held the public employees' claim against their employer for wrongful termination in violation of public policy was barred by Government Code section 815. (See also *Janis v. California State Lottery Com.* (1998) 68 Cal.App.4th 824, 830 [80 Cal.Rptr.2d 549].)

In addition, "[a] quantum meruit or quasi-contractual recovery rests upon the equitable theory that a contract to pay for services rendered is implied by law for reasons of justice. [Citation.] However, it is well settled that there is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation." (*Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1419 [49 Cal.Rptr.2d 191].) As discussed *ante*, if Sheppard has any right to alleged earned but unpaid wages, it is a contractual right. His quantum meruit claim therefore fails on this ground as well. We find no error.

## DISPOSITION

The judgment is reversed as to the order granting judgment on the pleadings pertaining to the claim for violation of the minimum wage law and the order sustaining the demurrer as to the claim for breach of contract. The judgment is affirmed pertaining to the order sustaining the demurrer as to the

claim for quantum meruit. Because each party prevailed in part, the parties shall bear their own costs on appeal.

Aronson, Acting P. J., and Ikola, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 13, 2011, S190297.